503 So.2d 501 (1987)
STATE of Louisiana
v.
Junius FREEMAN.
No. KA-6168.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1987.
*503 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Terry M. Boudreaux, Asst. Dist. Atty., New Orleans, for appellee.
Ferdinand J. Kleppner, Metairie, for appellant.
Before BARRY, KLEES and LOBRANO, JJ.
LOBRANO, Judge.
Defendant, Junius Freeman, was charged by bill of information with possession of marijuana and possession of cocaine, violations of LSA R.S. 40:966(D)(1), and LSA R.S. 40:967 respectively. On December 30, 1985, defendant was arraigned and pled not guilty. On January 9, 1986, defendant's Motion to Suppress the seized contraband was denied following an evidentiary hearing. On February 5, 1986, defendant, following a judge trial, was found guilty as charged on the possession of marijuana charge. On that same day, following a six (6) member jury trial, defendant was also found guilty as charged on the possession of cocaine charge. On April 1, 1986, defendant was adjudged a multiple offender pursuant to LSA R.S. 15:529.1(A)(1). Defendant waived all delays and was sentenced to six (6) months in Orleans Parish Prison on the possession of marijuana conviction and five (5) years at hard labor on the possession of cocaine conviction, which sentence is without benefit of parole consideration for one-half of the sentence and without benefit of good time, sentences to run consecutively.

FACTS:
On November 20, 1985, between the hours of 12:45 p.m. and 1:30 p.m., Officers Keene, Payton and Bardy conducted a mobile surveillance of defendant and his residence at 323 Socrates St., apartment A.
On the previous day, a confidential informant told Officer Keene that defendant was distributing narcotics from his front porch. The informant described defendant to Officer Keene and took him to defendant's residence to point out the location in question. The informant told Officer Keene he had witnessed defendant engaging in drug transactions at the Socrates address and the defendant kept his narcotics above his back door.
At the time of the surveillance, the officer's observed defendant sitting on his front porch. The officers observed two complete transactions and one partial transaction, in the same manner as described by the informant before arresting defendant. During the first transaction, a male approached defendant and handed defendant what appeared to be an unknown quantity of U.S. currency. Defendant took the money and entered the front door of his house. The male waited on the sidewalk. The officers, drove around the block to a position enabling them to see defendant's back door. From their parked police car, the officers observed defendant open the back door, reach above the door, remove an object and several minutes later replace the object above the door. The officers then drove back to the front of the house and *504 observed defendant exit the front door and hand something to the waiting man on the sidewalk. Shortly thereafter, the second transaction occurred when a female approached defendant and handed him what appeared to be an unknown quantity of U.S. Currency. Defendant, again, took the money and entered his residence. The female waited outside. The officers were not able to witness the completion of this transaction because they were detained by traffic while driving around the block. At approximately 1:30 p.m., the third transaction took place. A second male approached defendant and handed him some money. Defendant took the money and went inside the house. The officers drove around the block and parked their car on the side street. This time they exited the car and walked up to the side of the house. They again observed defendant open the back door, reach above the door, remove an object, take something from it and replace the object above the door. It was at this time the officers decided to arrest defendant. As they approached the front of the house, the waiting male ran off. One of the officers ran after him but was unable to apprehend him. As defendant exited the front of his house he was placed under arrest. In his hand defendant was carrying four bags of cocaine. The officers seized the cocaine. One officer then went to the rear of the house and seized the object they observed defendant remove from above his rear door. The object was a brown manila envelope containing twelve (12) bags of marijuana.
Defendant appeals his conviction and sentence alleging the following specifications of error:
1. The court erred in refusing to suppress physical evidence seized from the defendant and/or from the premises of the defendant.
2. The court erred in failing to sustain the defendant's objection and instruct the jury appropriately when the state, in opening argument referred to what witnesses "believed".
3. The court erred in permitting Officer James Keene to testify about what he thought was handed to the defendant and further about the meeting allegedly occurring at approximately 12:45 p.m.
4. The court erred in failing to sustain the defendant's objection to testimony by Officer Lee Payton as to speculation that an individual he saw speaking with the defendant was a "prospective buyer".
5. The court erred in allowing into evidence State's Exhibits 1, 2 and 3, the cocaine, marijuana and lab report, respectively.
6. The court erred in refusing to grant a new trial and in its refusal to allow reconsideration and retrial of a Motion to Suppress Evidence.
7. The court erred in permitting the defendant to be charged as a multiple offender, in view of the erroneous information concerning maximum sentences which was given to the defendant at the time of his initial conviction.
8. The court erred in sentencing the defendant to incarceration in the Orleans Parish Prison for a period of six months and in the Department of Corrections for a period of five years, to run consecutively, which sentences were excessive and overly harsh in view of the nature of the crimes in question.

SPECIFICATIONS OF ERROR 1, 5 AND 6:
No warrant was obtained to either arrest defendant or search for and seize any contraband in his possession. The question becomes whether the warrantless arrest and seizure of the cocaine and marijuana were constitutional, based on probable cause, thus justifying the trial court's denial of defendant's Motion to Suppress the seized contraband.
A warrantless arrest must be based upon probable cause. State v. Nicholas, 397 So.2d 1308 (La.1981); State v. Tuesno, 456 So.2d 186 (La.App. 4th Cir. 1984). Probable cause for an arrest exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution to believe the person to *505 be arrested has committed or is committing an offense. C.Cr.P. Art. 213; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Elliot, 407 So.2d 659 (La.1981); State v. Herbert, 351 So.2d 434 (La.1977). It is to be judged by the probabilities and practical considerations of everyday life on which average men, particularly average police officers, can be expected to act. State v. Smith, 377 So.2d 1220 (La.1979); State v. Landry, 454 So.2d 313 (La.App. 4th Cir.1984).
In the instant case, the officers received information from a confidential informant that defendant was dealing narcotics from the front porch of his residence. The informant stated to Officer Keene on the previous day that defendant would meet the "buyer" on his front porch, take the "buyer's" money and retrieve the narcotics from above his rear door. This is the exact scenario observed by the officers during the mobile surveillance. Furthermore, Officer Keene testified this informant had provided reliable information in the past on several occasions and that he personally observed defendant engaging in narcotics transactions from his residence.
Probable cause for an arrest may be based upon hearsay information received from a confidential informant, State v. LeCompte, 441 So.2d 249 (La.App. 4th Cir. 1983), writ denied 446 So.2d 314 (La.1984), provided the information is first measured against the test established in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The Gates test is a flexible one based upon the facts and circumstances of each case. It is a practical, non-technical method of establishing probable cause. State v. Rose, 503 So.2d 499 (La.App. 4th Cir.1986). Furthermore, the circumstances upon which the arresting officer acts must show that criminal conduct is more probable than non-criminal activity. State v. Herbert, supra; State v. Tuesno, supra.
Probable cause to arrest can also be established by corroborating facts. State v. LeCompte, supra. In State v. Tate, 407 So.2d 1133 (La.1981), our Supreme Court stated:
"An informant's tip can be significantly buttressed if either independent observations by the affiant corroborate sufficient details of the tip (whether suspicious or not) to negate the possibility that the informant fabricated his report, or independent observations by the affiant contribute to a showing of probable cause by revealing not merely normal patterns of activity but activity that reasonably arouses suspicion."
Unquestionably, the transactions observed by the officers revealed not "merely normal patterns of activity" but activity that reasonably aroused suspicion because of their similarity to the informants tip and their familiar association with illegal drug transactions.
The officer's independent observations permitted "the suspicion engendered by the informant's report to ripen into a judgment that a crime was probably being committed." Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
Thus, the officers had probable cause to arrest defendant and to seize the cocaine from his hand, an area within his immediate control. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
The seizure of the envelope containing the marijuana poses a different issue. Here, the seized contraband was kept outside of defendant's residence above his rear door. Because "the Fourth Amendment has drawn a firm line at the entrance to the house," Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); State v. Farber, 446 So.2d 1376 (La.App. 1st Cir.1984), writ den. 449 So.2d 1376, its applicability to the instant case is questionable since defendant's actions were done in full public view. In deciding its applicability, the question becomes whether defendant's expectation of privacy was justified and reasonable given the facts. State v. Nine, 315 So.2d 667 (La.1975).
The Fourth Amendment protects one's right to privacy and not a specific place. Katz v. United States, 389 U.S. 347, *506 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Nine, supra.
The test by which a person's "expectation of privacy" is measured is twofold: first, the person must exhibit an actual subjective expectation of privacy and second, the expectation must be one that society is prepared to recognize as reasonable. State v. Dupuis, 378 So.2d 934 (La. 1979) cert. dism'd. 446 U.S. 993, 100 S.Ct. 2980, 64 L.Ed.2d 850; cert. den. 449 U.S. 828, 101 S.Ct. 94, 66 L.Ed.2d 32 (1980).
If it is determined that the accused has no reasonable expectation of privacy in the area invaded, neither a warrant nor an exception to the warrant requirement is needed for the seized evidence to be admissible. State v. Ford, 379 So.2d 729 (La. 1980).
Defendant asserts the facts of his case are analogous to the facts in State v. Fearn, 345 So.2d 468 (La.1977). We disagree. The facts in Fearn are easily distinguishable. In Fearn, the defendant was growing marijuana in a ditch behind his house. The plants were screened from public view by other weeds and were not openly displayed to public view. The plants could not be seen from a public road or street. There is no question the defendant in Fearn took every possible precaution to hide the marijuana. In the instant case it cannot be said defendant took such precautions to ensure a reasonable expectation of privacy. The officers did not search for the marijuana. Defendant's actions in removing the envelope, taking portions from it and replacing it were bold, cavalier and very open to public view. Defendant may have had a subjective expectation of privacy but certainly not a reasonable one. Officer Keene testified defendant opened his back door and removed the envelope from between the top edge of the exterior of the rear door and the roof joists. There was no roof overhang hiding the area and the back fence was low. All of defendant's actions relative to the envelope containing the marijuana were easily observed by the officers while sitting in their police car parked on a public street. Any passerby could easily have observed the same activity. What a person knowingly exposes to the public is not a subject of Fourth amendment protection. Katz v. United States, supra. The fact that the officers could not see thru the envelope is irrelevant. Here, probable cause involves the probability that incriminating evidence is involved, determined by the "totality of the circumstances" confronting the officers. Illinois v. Gates, supra. The law has recognized that a law enforcement officer may rely on his training and experience to draw inferences and make deductions that might well elude an untrained person. State v. Knowles, 438 So.2d 648 (La.App. 2nd Cir.1983), writ den. 442 So.2d 458, citing United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); State v. Evans, 441 So.2d 82 (La.App. 2nd Cir. 1983). In the instant case, we find no legitimate expectation of privacy. The incriminating evidence, even though not visible thru the envelope, was "immediately apparent" because the officers had probable cause to believe the contents were contraband. State v. Knowles, supra, citing Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Given the "totality of the circumstances" the envelope was a "suspicious" container which came into plain view of the officers thru defendant's own actions. The officers did not search for the envelope. The seizure of property in plain view by an officer who has the right to be where he is involves no invasion of privacy and is reasonable if there is probable cause to associate that property with criminal activity. State v. Knowles, supra; State v. Evans, supra.
These specifications of error are without merit.

SPECIFICATIONS OF ERROR 2, 3 AND 4:
By these specifications of error, defendant alleges the trial court erred in allowing the State, in its opening statement, to refer to what a witness "believed"; in allowing a state witness to testify about what he thought was handed to defendant and about a meeting allegedly occurring at about 12:45 p.m.
*507 The prosecutor stated, "This person came to the door and police observed, again Officers Payton, Keene and Bardy, observed what they believed to be ....." C.Cr.P. Art. 766 governs the scope of opening statements:
"The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."
The purpose of Art. 766 is to prevent surprises and to allow adequate time for preparation of the defense, "as well as to avoid certain problems that had been attendant to mentioning of confessions or inculpatory statements in the State's opening statements." State v. Parker, 436 So.2d 495 (La.1983). Here, there was no surprise and the referral by the prosecutor to the reasoning behind the officers' actions did not cause other "attendant problems." This statement by the prosecutor falls squarely within "the nature of the evidence by which the State expects to prove the charge." C.Cr.P. Art. 766. We find no abuse of discretion in the trial judge's determination that the statement was permissible. State v. Marquer, 446 So.2d 1258 (La.App. 4th Cir.1984), writ den. 450 So.2d 359, cert den. 469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116.
Defendant further contends the trial court erred in allowing the officers to testify as to their suspicions and to what they observed "appeared to be". It is a well settled rule of law that a police officer cannot give his opinion when he is no more of an expert that the jurors. State v. Wheeler, 416 So.2d 78 (La.1982); State v. White, 450 So.2d 648 (La.1984). Here, the officers were not testifying in an expert capacity. They were merely stating to the best of their ability and training that they observed the three unidentified subjects hand to defendant what appeared to be money. They were merely testifying to the facts they observed which lead to the probable cause for defendant's arrest.
Defendant offers no argument on the statement concerning the alleged 12:45 p.m. meeting and it is deemed abandoned. State v. Simmons, 455 So.2d 1267 (La.App. 4th Cir.1984).
Defendant also assigns as error the admission of Officer Payton's statement characterizing the black male involved in the third transaction as "the prospective buyer". Defendant argues this characterization goes to the heart of his guilt or innocence and, as such, is impermissible. In support of this contention, defendant cites State v. Wheeler, supra. Wheeler, however, is not applicable. In Wheeler, the prosecutor posed a hypothetical fact situation based on the facts in Wheeler and asked the police witness to give his opinion as to what an individual involved in that hypothetical situation would be doing. The witness replied that such an individual would be involved in narcotics distribution. In the instant case, no such hypothetical question was asked Officer Payton. The question which prompted the "prospective buyer" comment was in response to the prosecutors question as to whether the officers were able to detain the person waiting outside defendant's house.
These specifications of error are without merit.

SPECIFICATION OF ERROR 7:
Defendant contends the trial court erred in permitting him to be charged as a multiple offender and in finding him to be a multiple offender based on a constitutionally defective guilty plea colloquy at the time defendant pled guilty to the predicate felony. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Defendant specifically points to the fact that the trial court did not advise him that this conviction could be subsequently used as a basis for a multiple offender proceeding in the future. Defendant's contentions are without merit.
First, the trial court has no authority to prohibit the district attorney from filing a multiple offender bill of information. LSA C.Cr.P. Art. 61.
Second, defendant's assertion that he should have been told the conviction could be used to enhance future sentences has been rejected by our Supreme Court in *508 State v. Nuccio, 454 So.2d 93 (La. 1984). Boykin requires that a defendant be advised of his right against self incrimination, to his right to trial by jury and to his right to confront his accusers. The High Court in Nuccio stated:

"Boykin, furthermore, only requires that a defendant be informed of the three rights enumerated above. Its scope has not been expanded to include advising the defendant of any other rights which he may have, nor of the possible consequences of his actions. Our jurisprudence has never required that a defendant be informed that his guilty pleahis convictionmay be used as a basis for the filing of a future multiple offender bill." at p. 104.
A review of the colloquy to the predicate felony shows compliance with Boykin.

SPECIFICATION OF ERROR 8:
Defendant contends his consecutive sentences of six (6) months in the Orleans Parish Prison for the possession of marijuana conviction and five (5) years at hard labor for the possession of cocaine conviction are excessive. As a multiple offender, defendant could have received a maximum of ten (10) years. La.R.S. 15:529.1(A)(1); La.R.S. 40:967 and La.R.S. 40:966(D)(1).
The Louisiana Constitution prohibits the imposition of excessive punishment. Art. 1, Sec. 20. The imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment that is enforceable by this court on review. State v. Thomas, 447 So.2d 1053 (La.1984); State v. Soco, 441 So.2d 719 (La.1983); State v. Sepulvado, 367 So.2d 762 (La. 1979).
A sentence is excessive and unconstitutional if it is "grossly out of proportion to the severity of the crime" or "nothing more than the purposeless and needless imposition of pain and suffering". State v. Brogdon, 457 So.2d 616 (La.1984) cert. denied 471 U.S. 111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Telsee, 425 So.2d 1251 (La.1983). Code of Criminal Procedure Art. 894.1 sets forth criteria to be used by the trial court in determining defendant's sentence. The trial court need not articulate every circumstance cited, but it must indicate that it considered the 894.1 guidelines in tailoring a particular sentence to a particular defendant convicted of a particular crime. State v. Guiden, 399 So.2d 194 (La.1981) cert. denied 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). Not only the aggravating circumstances but the mitigating circumstances as well must be considered, State v. Franks, 373 So.2d 1307 (La.1979) and the court must state the factual basis underlying its conclusion. State v. Saunders, 393 So.2d 1278 (La.1981). Accordingly, the sentencing record must reflect that the trial judge considered the personal history of the defendant in addition to the seriousness of the crime and the past criminal history of the defendant. State v. Quebedeaux, 424 So.2d 1009 (La.1982), affirmed on remand 446 So.2d 1210 (La.1984); State v. Jones, 398 So.2d 1049 (La.1981); State v. Molinet, 393 So.2d 721 (La.1981).
A review of the sentencing transcript shows compliance with Art. 894.1.
Accordingly, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. State v. Quebedeaux, supra.
Although not unbridled, the trial court is given great discretion in sentencing within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983).
Reviewing other sentences following similar convictions, we find, considering defendant was adjudged a multiple offender, the sentences imposed were not excessive.
In State v. Tasker, 448 So.2d 1311 (La. App. 1st Cir.1984) writ denied 450 So.2d 644 (La.1984) defendant was sentenced to five (5) years at hard labor for possession of cocaine to run concurrently with five (5) and seven (7) years sentences for convictions of possession of marijuana with intent to distribute.
In State v. Davis, 440 So.2d 855 (La.App. 2nd Cir.1983), defendant was convicted of distribution of cocaine and was sentenced to five (5) years at hard labor.
*509 This specification of error is without merit.
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.