PRESTON H. HUFFT, Judge Pro Tern.
The defendant, Edward Hickman, was charged by Bill of Information with Armed Robbery, [LSA-R.S. 14:64] and attempted First Degree Murder [LSA-R.S. 14:27 and 14:30]. The defendant was tried before a twelve (12) member jury and found guilty of Attempted Armed Robbery [LSA-R.S. 14:27 and 14:64] and Aggravated Battery [LSA-R.S. 14:34]. The defendant was multiple billed and sentenced to consecutive sentences of twenty-five (25) years for the attempted armed robbery and ten (10) years for the aggravated battery. We affirm.
On July 21, 1987, the defendant and Arthur Joseph were playing a game called “pitch the line”. After winning approximately $800.00 from defendant, Joseph started to leave when defendant pointed a gun at him and told him to leave the money. After Joseph complied with defendant’s request, the defendant shot him. Defendant then aimed the gun at Joseph’s head, but left without firing a second time.
*110 Appealing, defendant has raised seven (7) assignments of error relating to insufficiency of evidence, misstatement of the felony murder statute, denial of the right of confrontation and improper comments made by the trial judge on the evidence. We have additionally reviewed the record for errors patent and have found none.
In his first two assignments of error, defendant claims that the evidence is insufficient to support his convictions.
On reviewing the sufficiency of evidence to support a conviction, the court examines the evidence in the light most favorable to the prosecution and determines whether any rational trier of fact could have found that the state has proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Furthermore, LSA-R.S. 15:438 provides that when circumstantial evidence is used to convict, every reasonable hypothesis of innocence must be excluded. The statutory rule is not a separate test from the Jackson standard and has not established a stricter standard of review in circumstantial evidence cases. Therefore, all the evidence, both direct and circumstantial, must be sufficient under the Jackson standard to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Wright, 445 So.2d 1198 (La.1984).
To support the conviction for attempted armed robbery, the state must prove beyond a reasonable doubt that the defendant, having the requisite specific intent, did commit or omit an act for the purpose of and tending directly toward the accomplishing of the taking of something of value which belonged to the victim from the person of the victim or in the victim’s immediate control by the use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:27 and 14:64. To support a conviction for aggravated battery, the state must prove beyond a reasonable doubt that there was the intentional use of force or violence upon the person of the victim by the defendant while the defendant was armed with a dangerous weapon. LSA-R.S. 14:34.
The victim testified that after he won the • money and began to leave, defendant pointed the gun at him, and told him to leave the money. The victim threw the money on the ground and the defendant shot him. On the other hand, the defendant testified that it was the victim who aimed the gun at him and told him to leave the money. According to defendant, after he put the money on the ground, he attempted to knock the gun from Joseph’s hand and as the result of a struggle, Joseph was accidentally shot.
It is not the function of the reviewing court to assess the credibility of witnesses or reweigh the evidence. State v. Rosiere, 488 So.2d 965 (La.1986). Viewing the evidence in the light most favorable to the State, we find that the evidence is sufficient to support a verdict of guilty of attempted armed robbery and aggravated battery.
These assignments of error are without merit.
In his third assignment, defendant claims that reversible error was committed when the State misstated the law concerning the felony murder statute. The error occurred when, during voir dire, the prosecutor stated “that first degree murder is the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm”. There can only be an attempted first degree murder if the perpetrator had the intent to kill and not merely to inflict great bodily harm. State v. Butler, 322 So.2d 189 (La.1975).
C.Cr.P. Art. 786 places the scope of voir dire examination within the discretion of the trial judge and his rulings will not be disturbed absent a clear abuse of discretion. State v. Robinson, 404 So.2d 907 (La.1981). The purpose of the voir dire examination is to select jurors who can render an impartial verdict. State v. Williams, 457 So.2d 610 (La.1984).
In the instant case, the defense is complaining of the prosecutor’s misstatements regarding the law. However, the trial *111 judge quickly clarified the issue and explained to the jury that the applicable law would be given by him. Any error was harmless and the defendant was in no way deprived of a complete and fair voir dire. There was no reversible error committed during the voir dire.
The defense also objects to the same misstatement of the law on Attempted First Degree Murder by the prosecutor in the opening statement.
C.Cr.P. Art. 766 governs the scope of opening statements and reads in full:
The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge.
This article is intended to prevent surprises and to allow adequate time for preparation of the defense, “as well as to avoid certain problems that had been attendant to mentioning of confessions or inculpatory statements in the State’s opening statement”. State v. Parker, 436 So.2d 495, 499 (La.1983); citing State v. Russell, 416 So. 2d 1283 (La.1982); State v. Freeman, 503 So.2d 501 (La.App. 4th Cir.1987).
Here there was no showing that the trial judge abused his discretion and absent such, a decision will not be vacated. State v. McClinton, 399 So.2d 178 (La.1981). The remarks went beyond the scope of opening statements; however, such did not warrant a mistrial.
C.Cr.P. Art. 771 allows for the admonition of a jury if an irrelevant or immaterial remark is made and the possibility of prejudice to the defendant exists. In the instant case, the trial judge admonished the jury and clarified the purpose of opening statements. Accordingly, any error is harmless and not reversible.
In his fourth assignment of error, defendant claims that the trial judge gave an erroneous jury charge. Defendant objects specifically to the following portion of the charge:
The defendant in this matter is also charged with attempted first degree murder. There are five verdicts responsive to this charge, guilty as charged, guilty of attempted second degree murder, guilty of attempted manslaughter, guilty of aggravated battery, and not guilty. You have already been informed concerning the law on attempted crimes. And again, an attempt takes place when an offender with the specific intent to commit a certain offense does or omits some action designed to accomplish his intention. First degree murder is the killing a human being when the offender has the specific intent to kill and while the offender is engaged in the commission or attempted commission of an armed robbery. So if you find that the offender, one, had the specific intent to kill the victim; two, that he took some action designed to further this end; three, that the attempt took place during the commission or attempted commission by the defendant of an armed robbery; and, four, that this took place in the Parish of Orleans on or about the date specified in the bill of information then you shall find the defendant guilty as charged of attempted first degree murder. The second verdict responsive to this charge is that of attempted second degree murder.”
We conclude there is no error in the jury charge. Thus, this assignment is without merit.
In his fifth assignment, defendant claims that the trial judge erred by denying his right of confrontation by limiting the cross examination of the alleged victim. According to defendant, he attempted to question the victim about his two (2) prior arrests which defendant claims the state agreed to drop in exchange for the victim’s testimony against defendant.
Defendant has the right to confront and cross examine witnesses against him. State v. Batista, 496 So.2d. 1165 (La.App. 4th Cir.1986). LSA-R.S. 15:492 allows a defendant to question a witness on possible plea bargains and develop any biases which a witness may have. The possibility that the state may have leverage over a witness due to criminal charges is a valid area of *112 cross examination. State v. Rankin 465 So.2d. 679 (La.1985).
Prior to trial, the District Attorney had explained to the court that the first of two (2) charges pending against Joseph was dropped due to the victim’s unwillingness to prosecute, and the second charge was dropped due to the illegality of the search. Consequently, because the cross examination of the victim relating to his prior arrests did not fall under LSA-R.S. 15:492, the trial judge correctly concluded that the victim could not be cross examined regarding his prior arrests.
In his sixth assignment, defendant claims that the trial judge erred by failing to allow further cross examination of the victim to show his propensity to violence. In this regard the defendant, had posed questions about a scar on the victim’s body. According to the defendant, if he had been allowed to cross examine the victim regarding the old wound, the victim’s propensity for violence would have been revealed.
LSA-R.S. 15:482 provides that in the absence of evidence of hostile demonstration or an overt act on the part of the party slain or injured, evidence of dangerous character is not admissible. The term “overt act” has been interpreted as any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. State v. Brown 172 La. 121, 133 So. 383 (La.1931).
In State v. Carter, 490 So.2d. 291 (La.App. 4th Cir.1986), the defense alleged that the trial court had erred by refusing to allow into evidence the victim’s criminal record to show her propensity to carry a weapon. This court affirmed the defendant’s conviction and sentence concluding that the assignment lacked merit because the defendant could not satisfactorily show an overt act.
In the instant case, there was no showing of an overt act on the part of the victim except for the self serving conflicting testimony of defendant. This evidence is insufficient. Carter at 294. Consequently, we conclude that this assignment has no merit.
Defendant lastly contends that the trial judge erred in making the following comments upon the evidence in the presence of the jury:
CROSS EXAMINATION
BY MR. ARY:
Q Dr. Daley, did you have a chance to review the chart when you came here?
A Yes, I did.
Q Did you note in the chart that Mr. Joseph was seen dancing in the halls at Charity two days after surgery?
A I did see that. I don’t believe it’s two days after that that note was written.
Q But he was dancing in Charity in the halls though, right?
A That’s what the med student that was also following him wrote, so I believe it.
Q And you noted that there was a prior stab wound as part of his history?
BY MS. LARGUIER: Objection, your hon- or; that’s irrelevant to the surgery that this doctor performed.
BY THE COURT: Yeah, I would say that’s irrelevant.
BY MR. ARY: I have no further questions.
REDIRECT EXAMINATION
BY MS. LARGUIER:
Q Doctor, what’s the recovery period for this type of surgery?
A It depends upon the patient.
Q And how well did Mr. Joseph take to the surgery?
A He did pretty well.
Q So estimating then, in your opinion, what would be his recovery period?
A Oh, as far as any long-term consequences? It’s hard to say. Some people after an abdominal operation have adhe-sions that cause pain for years. I haven’t had a chance to talk to him to find out if he’s still having any pain from the labaratory.
BY MR. ARY: I’m going to ask that all that be stricken. It’s entirely speculative.
BY MS. LARGUIER: Your honor, he hasn’t qualified—
*113 BY THE COURT: No, I’m not going to ask that it be stricken. I will explain to the jury that it has nothing to do with the charge whether or not he’s still having pain or not. The question will be the intent which you will have to decide.
EXAMINATION RESUMED BY MS. LAR-GUIER:
Q Doctor, would it help you to refresh your memory to look a these medicals to see just when Mr. Joseph was out of bed and walking?
A Sure.
Q I’d like to show you what I’m marking for purposes of identification State’s Exhibit 2 in globo.
BY THE COURT: What is that?
BY MS. LARGUIER: These are the medical records of Charity Hospital.
BY THE COURT: Do you have any problems stipulating to this or do we have to go through them? What are you showing them for? Just introduction?
BY MS. LARGUIER: No, your honor, to see when the victim actually got out of bed.
BY THE COURT: There’s no question that the victim in this particular thing — you treated the victim for gunshot wounds, is that correct?
A Yes, sir.
BY THE COURT: The fact that he was dancing or not dancing in the hall, does that mean that he might not have — you still treated him for gunshot wounds, didn’t you?
A Yes, sir.
BY THE COURT: All right. What’s the relevance of all this, Ms. Larguier? What are we wasting time for.
BY MS. LARGUIER: He said, your honor, that he was dancing in the halls making it seem like it was five minutes after the surgery.
BY THE COURT: The Court is going to say it’s irrelevant. It doesn’t matter if he was dancing in the hall two seconds after the operation occurred. The doctor testified that he was shot and he was shot in a life — threatening situation, hitting the liver, etc. It doesn’t matter if—
BY MR. ARY: I’m going to object and move for a mistrial.
BY THE COURT: Mistrial denied.
BY MR. ARY: Court’s commenting on the evidence in this matter.
BY THE COURT: I’m not commenting on the evidence. I’m reminding the jury what was said. Whether or not the dancing in the hall is contained in that document is irrelevant. That’s my ruling. Let’s move on, Ms. Larguier. (Tr. 44-45).
Louisiana Code of Criminal Procedure article 772 prohibits a trial judge from commenting on the evidence or facts presented at trial.[1]
One element of a fair trial is the requirement of complete neutrality on the part of the judge. State v. Johnson, 438 So.2d 1091 (La.1983). A trial judge’s disparaging remarks which adversely influence and prejudice the defendant may constitute reversible error upon a showing that these remarks contributed to the verdict. Id. at 1102.
The trial judge stated to the jury that he was not commenting on the evidence but was merely calling to their attention his ruling that any reference to “dancing in the hall” was not relevant evidence and was not to be considered. Even if the trial judge’s remarks concerning his ruling on the relevancy of the evidence were to be construed as a comment on the evidence, there was no prejudice to the defendant and they in no way contributed to the verdict. We find no merit in this assignment of error.
Accordingly, defendant’s convictions and sentences are affirmed.
AFFIRMED.

. C.Cr.P. art. ’ reads: The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.